**KANSAS CITY, Missouri, Plaintiff-Respondent,**

v.

**Danny L. HILL, Defendant-Appellant.**

No. 24951.

Kansas City Court of Appeals.

Missouri.

April 7, 1969.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 2, 1969.

Application to Transfer Denied July 14, 1969.

Roy W. Brown, Compton & Brown, Kansas City, for appellant.

Herbert C. Hoffman, Charles A. Lewis, Kansas City, for respondent.

SPERRY, Commissioner.

This is an appeal by defendant, Danny L. Hill, from a judgment of the Circuit Court of Jackson County (trial was to the court), finding him guilty of violating the ordinance of Kansas City in that he operated a motor vehicle on a public street in Kansas City at a speed of 43 miles per hour in a 35 mile per hour speed zone. He was sentenced to pay a fine of $25.00 and costs.

The appeal rests on the contention that evidence based on radar readings was introduced over the objection of defendant; that such evidence, in this case, was incompetent; that there was not sufficient evidence in addition to radar, to make a prima facie case of violation of the ordinances: "that the city wholly failed to prove the violation of city ordinance 58.-280(6) — (speeding) by competent credible evidence beyond a reasonable doubt".

No issue is made as to the validity of the ordinance involved herein, which prohibited a speed in excess of 35 miles per hour at the time and place where the violation is charged to have occurred. The legal sufficiency of the information, upon which the prosecution is based, is not challenged.

■ Defendant contended that the accuracy of the radar unit, at the time and place the arrest was made, was not sufficiently shown. The rate of speed shown on the speedmeter dial was 43 miles per hour. The speed measuring accuracy of the speedmeter was shown by evidence tending to prove that it was tested and shown to be accurate by the use of two separate tuning forks. Defendant contends that the accuracy of the tuning forks was not sufficiently shown. In City of St. Louis v. Boecker, Mo.App., 370 S.W.2d 731, 738, it was held that the value of any test of a radar speedmeter depends upon the accuracy of the measuring device against which it was tested. We agree. It was the duty of plaintiff here to establish that fact by evidence.

Corporal Allmon, a member of the Kansas City Police Department, stated that, on May 9, 1967, he was operating a radar unit at about 65th and Ward Parkway; that, thirty minutes after arrival there, defendant's motor vehicle "came through" the speed check; that he had set up the radar unit for operation; that he had checked its accuracy by means of two separate calibrated tuning forks; that one was calibrated at 35 miles per hour and the other at 50

miles; that, after setting up the machine and after it began registering, it was given a crystal check to ascertain if it was functioning; that, thereafter, he vibrated the 35 mile fork over the head of the machine, and likewise the 50 mile fork; that the dial read correctly, 35 and 50 miles per hour; that the machine operated constantly thereafter until defendant's vehicle came through; that there was no interference from objects other than this vehicle while it was going through; that, once each month, he takes the tuning forks to Dominator Corporation in Kansas City, where they are tested for accuracy on a Berkley Beckman Frequency Counter, an electronic device that measures their frequency; that he witnessed the calibration of each of these forks, as stated, on May 4, 1967, and on May 27 and on June 1, (the arrest was made May 9); that, in his opinion, no adjustment was necessary to be made; that this was a visual observation, that is, he watched the vehicle and the dial and observed and watched the speed. At this point witness was asked what reading he observed, as to speed, and defendant objected on the ground that there had been no showing that the radar machine was accurate in measuring speed except that it had been tested by tuning forks; that this, standing alone, did not establish the accuracy of the machine at the time it was being used.

The objection was overruled and witness stated that the radar speedmeter indicated that the vehicle passed through at an indicated speed of 43 miles per hour with no surges shown, the reading was steady. He stated that, as defendant's vehicle approached him, witness stepped out of the car and signalled defendant to pull to the curb; that he issued a summons to defendant; that he then again tested the unit with both forks; that it was operating properly.

In response to a question as to whether, based on his driving experience and on his having observed the speed of motor vehicles being operated by others, he was able

to form a judgment of the speed at which the vehicle was travelling, in relation to the posted speed limit of 35 miles per hour, independent of the radar unit, he answered "yes", and stated that, in his opinion, the speed was in excess of 35 miles per hour. Defendant objected to the introduction of this testimony on the ground that, according to the information filed, plaintiff charged and relied solely on the radar reading. The court overruled the objection and no point is made in the brief regarding this action.

The witness stated that the speedmeter reading began at a point more than a block distant and continued as the vehicle travelled northbound on Ward Parkway. He stated that he had 18 months of instruction on the *use* of radar in the U. S. Air Force; that he had driven motor vehicles for twenty years; that he had observed the movement of traffic and its speed by using a stop watch; that he had observed the radar speed in this case by looking at a dial similar to those used on automobile speedometers; that he set up the unit at 6:30 P.M., checked defendant's vehicle at 7:30 P.M., and broke down the machine at 7:50 P.M.

Defendant testified to the effect that, as he travelled toward the police car he recognized it as a police car; that he looked at his speedometer; that it was registering 35 miles per hour; that he continued at that speed, neither slowing nor accelerating until the officer signalled him to stop; that his speedometer had never been checked as to accuracy.

In State v. Graham, Mo.App., 322 S.W. 2d 188, 195, it was held that the court would take judicial notice of the fact that a radar speedmeter is a device which, within a reasonable engineering tolerance *and when properly functioning and operated,* accurately measures speed in terms of miles per hour.

In City of St. Louis v. Boecker, Mo. App., 370 S.W.2d 731, the court considered a speed violation case, and followed the ruling in the Graham case.

In the Boecker case it was said that in the Graham case it was held that courts will take judicial notice of the fact that a radar speedmeter may not operate properly on occasions and for various reasons, that it is the "obligation of the proponent who relies on it to establish, prima facie, that the machine was properly functioning", and that the "value of such tests (of a radar speedmeter) would depend upon the accuracy of the measuring device against which it was checked".

In the Graham case, it was further said that if a test shows that the speed registered falls within 1 to 3 miles per hour over the legal limit, evidence based on machine measurements should not be received. However, in that case, the speedmeter and the speedometer registered 15 miles per hour in excess of the speed permitted and it was held acceptable. Here, the recorded speed was 8 miles in excess of the lawful speed and is acceptable on that point.

In the Graham and Boecker cases the theory upon which radar speedmeters operate is discussed. In Missouri Law Review, Vol. 24, pp. 196, 198, this subject is also discussed. The author draws on the testimony of Dr. Kopper, given in various court tried cases. This information is very interesting and helpful but, in view of the fact that two Missouri courts have declared that we will take judicial notice of the dependability of the radar speedmeter, if the machine is properly operated and is shown to be accurate, we need not go into detail regarding scientific theories there discussed.

The first question here is whether the radar machine was properly operated. We think the evidence here, in that respect, is satisfactory, based on the court decisions and on what is said in the Missouri Law Review article mentioned above.

As to whether this speedmeter was accurate in regard to measurement of speed we must rely on the tests made with two tuning forks. In the Graham case two separate tests were made as to the accuracy of

the speedmeter. One was by twice running through an automobile, the speedometer of which registered a speed of 50 to 70 miles per hour. The court noted that speedometers do not always register accurate speeds. But the *speedmeter* was tested by a tuning fork, and it registered speeds, on the automobile, identical with those shown on the speedmeter. The defendant's motor vehicle was shown, by the speedmeter and also by the speedometer, to be travelling at 15 miles per hour in excess of the speed permitted by law. The court accepted the evidence as shown by the speedometer and by the speedmeter, holding it to be admissible.

In addition to the radar evidence a Highway Patrol Trooper observed the speed of the vehicle there involved and estimated it to be in excess of 50 miles per hour. The defendant operator admitted, after the arrest, that the speed of the truck was 65 miles per hour. Consequently, the court considered that the chief question presented was that of the *admissibility* of the radar evidence and ruled, as we have stated, that because of the dual test by radar and by speedometer, and the fact that the speed shown, in both tests, was 15 miles per hour in excess of that legally permitted, the evidence was admissible.

In the Boecker case, (733) the court stated that there was evidence to the effect that the police department had two tuning forks, one calibrated for 30 miles per hour and the other for 60, but there was no evidence as to when the units used by the officer, in that case, were ever checked or tested for accuracy, either before or after the arrest. The evidence was ruled to be inadmissible. There was no evidence of speed by witnesses who saw and estimated the speed.

■ The evidence here is that the tuning forks used were calibrated by electronic equipment designed for that purpose; that the officer witnessed and observed the process of calibration, as he had previously done in the performance of his official duties; that neither fork, in his opinion, needed any adjustment; that one such calibration was made a few days prior to the arrest, one several days afterward, and one some weeks thereafter; and that, at no time was adjustment required. He tested the speedmeter with the forks after the unit had warmed up, prior to the arrest and, again, when he left location some thirty minutes after the arrest. We are constrained to hold that there was a sufficient showing of the accuracy of the forks and of the speedmeter so as to make the evidence in this case admissible, in view of what was said in the Graham and Boecker cases, supra. In Thomas v. City of Norfolk, 207 Va. 12, 147 S.E.2d, 727, 729–730, the court held that proof of the accuracy of a speed measuring instrument (tachometer) might be made by testing same against a calibrated master machine, without proof of the accuracy of the master machine. There must be a "point of faith somewhere". Farmer v. Commonwealth, 205 Va. 609, 139 S.E.2d 40–42.

■ In addition to the radar evidence in this case the arresting officer estimated the speed of defendant's vehicle to be in excess of the speed limit. The speedmeter indicated that the speed at which the vehicle travelled was 8 miles in excess of the lawful limit. The estimate was based on the officer's experience in estimating the speed of vehicles moving in traffic and by stop watch measurements. It was admissible. Chance v. Atchison, Topeka and Santa Fe Railway Co., Mo.Sup., 389 S.W.2d 774, 779; Johnson v. Cox, Mo.Sup., 262 S.W.2d 13, 15.

The evidence properly received in this case constituted *prima facia* proof of the charge.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion by SPERRY, C., is adopted as the opinion of this court.

HOWARD, P. J., CROSS, J., and H. HALL, Special Judge, concur.

SHANGLER, J., not participating because not a member of the Court when the cause was submitted.