THE STATE OF OHIO, APPELLEE, *v.* SHELT, APPELLANT.

(No. L-75-166—Decided February 20, 1976.)

*Mr. Ronald G. Heck,* for appellant.
*Mr. Joseph J. Jankowski, Jr.,* for appellee.

BROWN, P. J. Defendant Keith Shelt appeals from a finding of guilty and a sentence thereon, in a non-jury trial by the Maumee Municipal Court, that defendant was operating his automobile sixty-nine miles per hour in a fifty-five miles per hour zone—a violation of R. C. 4511.21 and 4511.211.

The speed of defendant's vehicle was obtained by the use of a moving radar device known as an MR-7, which enables the patrol car equipped with such a device to be in

motion while tracking the speed of vehicles approaching from an opposite direction. The MR-7 device differs from the conventional stationary radar device which operates on what is known as the Doppler effect. The stationary radar using the Doppler effect measures the speed that two objects are moving toward each other with the radar detecting device mounted on one of them. *State* v. *Wilcox* (1974), 40 Ohio App. 2d 380, at 383-384.

Defendant's first assignment of error contends that the trial court's finding of guilty is against the manifest weight of the evidence and contrary to law. This contention is predicated upon the defense argument that the evidence pertaining to the MR-7 radar device is insufficient to record accurately the speed of a defendant's vehicle. To support this argument, defendant relies upon *State* v. *Wilcox, supra*, involving an MR-7 radar device. Paragraph 2 of the syllabus of that case states:

"A person may not be convicted of speeding solely upon evidence obtained from a radar speed-meter device mounted in a moving patrol car in the absence of (1) expert testimony with respect to construction of the device and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which the two vehicles are moving toward each other, and (2) evidence that the device is in good condition for accurate work and (3) evidence that the witness using the device is one qualified for its use by training and experience."

In *Wilcox*, there was a failure of proof as to the three elements pertaining to the MR-7 radar device, as set forth in paragraph 2 of the syllabus. These insufficiencies were the basis, in *Wilcox*, for the reversal by the appellate court of the speeding conviction.

In this case, on the contrary, there is an abundance of evidence concerning the construction and method of operation of the MR-7 radar device. The engineering manager of the manufacturer of the MR-7 radar unit, Mr. William Goodson, Kustom Data. Communications, Inc., testified to the scientific reliability of the instrument known as the MR-7

for measuring speed accurately on a moving motor vehicle. Mr. Goodson was qualified as an expert and testified that as an employee of Kustom Data Communications, he was primarily concerned with the perfection of the MR-7 radar unit. He further testified that the MR-7 radar unit is designed to monitor traffic either in a stationary mode or a moving mode of operation. If a stationary mode is used, the unit functions in the same manner as conventional radar. In the moving mode, the unit operates on the same principles of physics as conventional radar systems—namely, the Doppler effect. When the moving mode is utilized, the speed of the patrol car is first determined. This was explained by the witness as follows:

"As the unit is moving down the road, there is a complex wave form received by the antenna. This transmitted frequency goes out and hits stationary objects—the ground, trees, signs, the road, everything reflects some signal. * * * Since those objects are stationary, you are going to get a reading which is a function of your own speed."

The witness then testified that the speed of a patrol car is then locked into a memory bank and is constantly updated to reflect any changes in the speed of the patrol car. When another object is moving toward the patrol car from an opposite direction, a frequency shift will be noted by the unit. This frequency shift represents the closing rate between the approaching object and the speed of the patrol car. The witness explained this effect as follows:

"So once the unit knows what its own speed is, then as you approach another vehicle which is coming toward you, the Doppler shift will be an additive in that it is a function of your speed plus the oncoming vehicle's speed."

The process of determining the speed of the oncoming vehicle is one of subtraction. The witness testified that this is accomplished by means of an electronic binary subtraction system widely accepted and used within electronic systems. The witness further testified that the MR-7 radar unit incorporates no new principles of physics, nor involves complicated electronic circuitry.

The operator of an MR-7 unit may pre-set a certain

speed by rotating the numerical dials of the instrument. If an oncoming vehicle is exceeding the pre-set speed, sharp audio sounds (beeps) will be given off by the audio portion of the MR-7 and the speed of the oncoming vehicle will be displayed on the read-out screen. The audio portion of the MR-7 operates in harmony with the Doppler principle for as the frequency of the microwave reflection changes there is a corresponding change in the tone of the audio output. The operator, therefore, can detect approaching vehicles by the increase in the clarity of the audio signal in addition to the changes in frequency pitch if the vehicle is increasing or decreasing its speed. The witness further testified that terrain, raindrops, birds, etc., will not affect the accuracy of the unit. Terrain will affect only the operational range, raindrops and birds, etc., will not give a speed displayed on the readout screen. Further, in such events, the machine goes through a redundant checking to make sure that it is getting a valid speed. The machine goes through five consecutive checks taking a total of .15 seconds. Further, the tone of the audio system enables the operator to distinguish between birds and vehicles. The use of the audio signal in conjunction with the digital readout also assists the operator in the determination that he is tracking the right vehicle.

The witness testified that the MR-7 radar consists of two units, an antenna and a receiving unit. The antenna is mounted on the rear window of the patrol car and aimed into the line of traffic which the patrolman wishes to monitor. The antenna can be mounted either on the exterior or interior of the patrol car. However, if it is mounted in the interior of the patrol car, the operational range is decreased but not its accuracy. If the antenna is not precisely parallel to the path of the oncoming vehicle, the range is decreased and the speed of the oncoming vehicle is lowered. The error then, if any, is in favor of the oncoming vehicle. The instrument also contains safeguards relative to faulty connections or a deficiency of power to the unit.

There was sufficient evidence that the MR-7 radar device was in good condition for accurate work. There was testimony from Patrolman Ward that the machine was properly calibrated. For an outline of the test of calibra-

tion, see *State* v. *Wilcox, supra.* In this operation, tuning forks are used which are supplied with the MR-7 by the manufacturer. Other tests were made by the operator to determine that the unit was functioning properly on the date of the defendant's arrest.

Lastly, there is sufficient evidence that the arresting officer using the device is one qualified for its use by training and experience. Therefore, the required elements of proof about the MR-7 radar device were fulfilled in accordance with the standards set in *State* v. *Wilcox.*

The converse of the legal proposition in paragraph 2 of the syllabus of *State* v. *Wilcox* is a valid rule of law and applicable. A person may be convicted of speeding solely upon evidence obtained from an MR-7 moving radar device mounted on a moving patrol vehicle where the record contains: (1) expert testimony of the construction of the device and its method of operation in determining the speed of the approaching vehicle from the opposite direction; (2) evidence that the device is in good condition for accurate work; and (3) evidence that the officer using the device is one qualified for its use by training and experience. *Cf.* *East Cleveland* v. *Ferell,* 168 Ohio St. 298..

The first assignment of error is, therefore, not well taken.

The second assignment of error is that the finding of guilty was error because the condition of the road at the time and place of the alleged offense was such that the speed of the defendant's vehicle was not unreasonable. The conditions and width of the highway at the time defendant's speed was clocked, at sixty-nine miles per hour, was sufficient to support a finding by the trial court that the speed was "greater * * * than is reasonable or proper" within the meaning of the first paragraph of R. C. 4511.21, and that by reason thereof defendant violated this statute. *State* v. *Saffell,* 44 Ohio St. 2d. 39.

The second assignment of error is, therefore, not well taken.

*Judgment affirmed.*

POTTER, and WILEY, JJ., concur.

120

POTTER, J., concurring. I join in the judgment and much of the opinion. However, I would hold, based on the evidence in this case, that hereafter in the prosecution on a charge of speeding based on a reading taken by a police officer from an MR-7 moving radar device, that it is not essential to the admissibility of such evidence to show by independent expert testimony the nature and function of or the scientific principles underlying such device, (see *East Cleveland* v. *Ferell* (1958), 168 Ohio St. 298), provided, as set forth in the foregoing opinion and the syllabus of *State* v. *Wilcox* (1974), 40 Ohio App. 2d 380, that there is evidence relative to the fact that the device is in good condition for accurate work and that the witness using the device is one qualified for its use by training and experience.

WILEY, J., concurring. I join in the concurrence of judge Potter. I would also state that upon the publication of this opinion, it may be judicially noticed that the MR-7 moving radar device, using the Doppler effect, is acceptable as dependable for its proposed purpose. *East Cleveland* v. *Ferell, supra* at 301.

BROWN, P. J., joins in the concurrences of Judges Potter and Wiley.