(606 P.2d 112)

No. 50,725

State of Kansas, *Appellee,* v. James F. Primm, II, *Appellant.*

Opinion filed February 8, 1980.

*Marian M. Burns,* of Burns & Burns, P.A., for appellant.

*Michael J. Hines,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before Parks, P.J., Abbott and Swinehart, JJ.

Abbott, J.: This is an appeal from defendant's conviction by a jury of speeding in violation of K.S.A. 8-1336. The defendant was fined $11 and costs.

The sole issue on appeal is whether the trial court erred in denying defendant's motion for acquittal which was made at the conclusion of the State's evidence. Defendant contends the State's case was defective in that no expert testimony was adduced as to the construction or method of operation of the radar utilized.

The sole witness appearing at trial was Highway Patrolman Terry J. Affholder. Trooper Affholder testified that on October 3, 1978, he was proceeding in his patrol car toward defendant's oncoming vehicle in Osage County. The patrol car was equipped with a KR11 radar unit which showed defendant's speed at 66

mph in a 55 mph speed zone. Affholder issued defendant a citation for speeding.

At trial, Affholder conceded he was not an expert with regard to the internal mechanisms of the radar unit, but that he had received training as to the machine and was a certified operator. Affholder explained tests he performed on the machine that were designed to test its accuracy. These tests included internal calibrations and checks with two different tuning forks. Affholder stated he performed these tests prior to his arrest of defendant, that he showed defendant the speed which the machine registered at the time of the arrest, and checked the unit again at the end of his work shift. All tests indicated the radar was functioning properly. He did not verify the speed of his own vehicle by any means other than the internal calibration of the radar machine. Affholder did not give his opinion of the speed of defendant's vehicle based on his visual observation.

At the close of the State's evidence, defendant made a motion for judgment of acquittal. The trial court overruled the motion, taking judicial notice of the reliability of radar generally and finding that no expert testimony was required as to the internal workings and principles involved. The jury found defendant guilty as charged and this appeal resulted.

The question presented here has not been previously addressed by our courts. Cases from other jurisdictions, however, have consistently held that evidence of the accuracy of the radar unit is necessary to sustain a conviction for speeding obtained solely by radar. Evidence of accuracy generally is a *prerequisite* to the admissibility of evidence of speed obtained by the use of a radar device. See *Everight v. City of Little Rock,* 230 Ark. 695, Syl. ¶ 1, 326 S.W.2d 796 (1959); *People v. Flaxman,* 74 Cal. App. 3d Supp. 16, 23-24, 141 Cal. Rptr. 799 (1977); *State v. Tomanelli,* 153 Conn. 365, 371, 216 A.2d 625 (1966); *Honeycutt v. Commonwealth,* 408 S.W.2d 421, 422-23 (Ky. App. 1966); *Kansas City v. Hill,* 442 S.W.2d 89, 91 (Mo. App. 1969); *Peterson v. State,* 163 Neb. 669, Syl. ¶ 3, 80 N.W.2d 688 (1957); *State v. Cardone,* 146 N.J. Super. 23, 27, 368 A.2d 952 (1976); *Hardaway v. State,* 202 Tenn. 94, Syl. ¶ 2, 302 S.W.2d 351 (1957); *State v. Doria,* 135 Vt. 341, 342, 376 A.2d 751 (1977).

The accuracy of a particular radar unit can be established by showing that the officer tested the device in accordance with accepted procedures. *People v. Burch,* 19 Ill. App. 3d 360, 363,

311 N.E.2d 410 (1974). In the present case there was evidence Trooper Affholder had tested the unit's internal calibration devices, and checked the unit before and after defendant's arrest by using two different tuning forks. Additionally, Affholder stated the tuning forks had been checked by the manufacturer in February 1978. Cases have found both tuning forks and internal calibration devices to be acceptable means of proving radar accuracy. See *People v. Flaxman,* 74 Cal. App. 3d Supp. at 23; *State v. McDonough,* 302 Minn. 468, 470, 225 N.W.2d 259 (1975); *Kansas City v. Hill,* 442 S.W.2d at 92; *People v. Lynch,* 61 Misc. 2d 117, 120, 304 N.Y.S.2d 985 (1969). We are of the opinion there was sufficient evidence of the radar unit's accuracy at the time of the alleged offense to establish a sufficient foundation to admit the radar reading into evidence.

It is also generally required that proof be offered that the operator of the radar unit is qualified to operate the radar device. The cases agree that the officer need not be an expert in the science or theory underlying the functions of the instrument. See *People v. Stankovich,* 119 Ill. App. 2d 187, 194, 255 N.E.2d 461 (1970); *State v. Graham,* 322 S.W.2d 188, 196 (Mo. App. 1959). In the present case, Trooper Affholder testified he had received several hours of classroom training and field training as to the particular radar unit in question and had used the radar unit for over a year as a highway patrolman. Such evidence was sufficient to establish his qualifications to operate the device.

Defendant's main complaint is that the State should be required to present expert testimony regarding the construction and method of operation of the radar in order to demonstrate that the device can accurately measure speed. The great majority of cases have held that judicial notice may be taken of the general reliability of radar to measure the speed of motor vehicles. See cases cited in Annot., 47 A.L.R.3d 822, § 3. Defendant distinguishes such cases on the basis that they involve use of *stationary* radar as opposed to radar mounted on a moving patrol vehicle as was used in this case. Defendant relies heavily on the case of *State v. Wilcox,* 40 Ohio App. 2d 380, 384, 319 N.E.2d 615 (1974), in which the Ohio Appeals Court held that, in order to sustain a moving radar-based speeding conviction, expert testimony must be adduced as to the construction of the device and its method of operation with respect to its ability to differentiate the speed of a

vehicle approaching the moving patrol car from the opposite direction from the combined speed at which the two vehicles are moving toward each other.

Two cases following *Wilcox* merit a brief discussion. In *State v. Shelt,* 46 Ohio App. 2d 115, 346 N.E.2d 345 (1976), the Ohio court noted the abundance of expert testimony regarding the construction and method of operation of a "moving" radar unit as discussed in *Wilcox.* The testimony disclosed that both stationary and moving radar operate on the Doppler effect, which has been judicially noticed as a reliable method of determining speed in a majority of jurisdictions. The *Shelt* court held that upon publication of the opinion, Ohio courts could take judicial notice that the particular moving radar device which utilizes the Doppler effect is acceptable as dependable for its proposed purpose without requiring expert testimony showing the nature and function of or the scientific principles underlying the device so long as there is testimony the machine is functioning properly and the operator is qualified by training and experience to operate the device.

Following *Shelt,* the Wisconsin Supreme Court considered the issue in *State v. Hanson,* 85 Wis. 2d 233, 270 N.W.2d 212 (1978). The *Hanson* court distinguished taking judicial notice of the *reliability* of the principles underlying moving radar from the *accuracy* of a particular radar device:

"The court takes this opportunity to establish guidelines for the prosecution of speeding citations issued on the basis of a moving speed radar device. The courts of this state may take judicial notice of the reliability of the underlying principles of speed radar detection that employs the Doppler effect as a means of determining the speed of moving objects. To this end, expert testimony is not needed to determine the initial admissibility of speed radar readings. The radar reading may be introduced by the operating law enforcement official, if he is qualified in its use and operation.

"The accuracy of any speed radar device is another matter. The accuracy of the most indisputable scientific theory is subject to its application in particular conditions. The application of any virtually undisputed scientific fact to the immediate surrounding conditions must be explained in ascertaining its accuracy." 85 Wis. 2d at 244-45.

The foundation evidence Wisconsin required in *Hanson* is unnecessary under the facts of this case for the reason that in *Hanson* evidence was presented that the machine did not give an accurate reading under certain circumstances. Foundation requirements were set to eliminate the possibility of error. In the case before us, we are considering a different, newer unit than

that considered by Wisconsin, and there is no evidence in the record before us that the unit does not function properly under all circumstances. The reasoning expressed in *Hanson* and set forth above is persuasive. The record in the present case indicates that the particular moving radar unit—the KR11—had been in use for two or three years at the time of trial. Although Trooper Affholder did not specifically refer to the Doppler effect, his testimony established that the KR11 operates on this well-established scientific principle. Consequently, we hold it was permissible for Affholder to testify initially as to the radar reading obtained. As noted earlier, the accuracy of the unit was adequately shown by Affholder's testimony regarding the internal calibrations and the tuning fork tests. No evidence was presented to dispute the accuracy of the radar unit in general or this particular unit specifically. Based on the record before us, we cannot say the trial court erroneously overruled defendant's motion for acquittal at the end of the State's evidence. The trial judge was justified in believing that guilt beyond a reasonable doubt was a fairly possible result for the jury's consideration. See *State v. Wilson & Wentworth,* 221 Kan. 359, 362, 559 P.2d 374 (1977).

Affirmed.