NOT DESIGNATED FOR PUBLICATION

No. 115,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BUDDY LEON RAMIREZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harper District Court; JAMES R. BILES, magistrate judge. Opinion filed August 26, 2016. Affirmed.

*J. Gregory Swanson*, of Liberal, for appellant.

*Janis I. Knox*, county attorney, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  Buddy Leon Ramirez appeals his conviction for speeding in Harper County. Ramirez asserts three claims of error on appeal:  (1) that the State failed to establish an adequate foundation for the admission of evidence that his vehicle was traveling at 88 miles per hour as measured by a radar unit; (2) that there was insufficient evidence to find that he was speeding in Harper County; and (3) that the district magistrate judge improperly denied his motion for a new trial. Finding none of these claims to be meritorious, we affirm Ramirez' conviction.

1

On May 22, 2015, Trooper James Reames of the Kansas Highway Patrol issued Ramirez a speeding ticket for driving a truck at 88 miles per hour in a 65 miles-per-hour zone on Kansas Highway 2 in Harper County. The citation listed "K 002 E 016" as the location at which Ramirez was speeding. It also stated that Trooper Reames used a radar unit to determine the truck's speed.

A district magistrate judge conducted a bench trial on October 6, 2015. During direct examination, Trooper Reames testified that he stopped Ramirez for speeding on K-2 Highway at "about the 16, 17 milepost" in Harper County. He further stated that this location was near the Barber and Harper county line. He also testified that he had stationed his patrol vehicle at the bottom of a hill in Harper County, using a "Stalker VSR2X" radar unit to check the speeds of vehicles as they entered Harper County from Barber County.

Before providing the speed at which the radar unit registered, Trooper Reames testified that he had been trained and certified to operate the particular radar unit he used to clock Ramirez. In addition to his general law enforcement training and his 10 years' experience with the Kansas Highway Patrol, Trooper Reames testified that he had been trained to use radar detection equipment while he was in the Kansas Highway Patrol Academy and then recertified biannually.

According to Trooper Reames, on the day he ticketed Ramirez, he tested the radar unit both before and after he used it to record the speed of Ramirez' truck. Trooper Reames explained that at the end of his shift that day, he conducted an internal and tuning fork test on the unit. He also testified that the radar unit passed both tests each time. It should be noted that Ramirez did not object to the adequacy of the evidentiary foundation at trial. Following this testimony, Trooper Reames stated that he used the radar unit to

determine that Ramirez' truck was travelling 88 miles per hour in a 65-miles-per-hour zone.

On cross-examination, Trooper Reames clarified that he used the radar unit on vehicles that were travelling down a hill that begins in Barber County and enters Harper County. More specifically, he explained that the crest of the hill and "partway down the hill" are in Barber County, while the highway enters Harper County "at the bottom of the hill."

On redirect, the prosecutor asked, "How can you be sure that he was speeding in Harper County if you're seeing him come over the hill and he's still in Barber County?" In response, Trooper Reames provided the following answer:

> "[T]he people that I check in that area, the speed continues for a long period of time and crosses over. So they're speeding when they're in Barber County, they're crossing the county line and they're continuing to speed because they don't see me for a long time. So that's how I know that. I can watch them cross the county line. There's a sign there where I sit and all that. I mean, if someone slows down before that, then they're going to be issued a citation or a warning for whatever the violation is in Barber County."

Furthermore, Trooper Reames agreed that there was "no doubt" that he clocked Ramirez as travelling at 88 miles per hour in Harper County.

Ramirez then testified that he knew he had been speeding. However, he believed that he was travelling at about 74 or 75 miles per hour as he "came over the crest of the hill" rather than the 88 miles per hour claimed by Trooper Reames. He also testified that he had recently placed larger tires on his truck, which he suggested might have affected the speed at which he believed he was travelling.

3

Following the presentation of closing arguments, the district magistrate judge found beyond a reasonable doubt that Ramirez was travelling 88 miles per hour in Harper County. Immediately thereafter, he imposed a fine of $132 fine and $108 in court costs.

Within 14 days of sentencing, Ramirez filed a motion for a new trial, arguing that there was insufficient evidence for the court to find that Ramirez was speeding in Harper County and that there was insufficient foundation to admit Trooper Reames' testimony regarding the speed of his vehicle. The same district magistrate judge who presided over the bench trial also heard the motion for new trial. Ramirez' attorney argued that he had just driven to the location listed on the speeding ticket and claimed that it was situated in Barber County. He also suggested that "maybe the Court wants to go out there on location." In addition, Ramirez' counsel asserted that the State did not properly certify Trooper Reames' qualifications to operate the radar unit.

The State responded by arguing that these issues were addressed during the bench trial and, after hearing the testimony of both Trooper Reames and Ramirez, the court had resolved them in its favor. The State pointed out that Trooper Reames unequivocally testified that Ramirez' vehicle was travelling at 88 miles per hour in Harper County. The State also argued that Trooper Reames simply marked the nearest mile marker on the ticket—not the exact location of where he observed Ramirez speeding. Lastly, the State argued that it had established the proper foundation to allow Trooper Reames to testify regarding Ramirez' speed. Thereafter, the district magistrate judge denied the motion.

On December 29, 2015, the district magistrate judge filed a journal entry denying Ramirez' motion for a new trial, and Ramirez filed a notice of appeal on January 5, 2016. Because the district magistrate judge who presided over this case is licensed to practice law in Kansas, the appeal was appropriately filed with this court rather than with the district court. See K.S.A. 2014 Supp. 20-302b(c)(2)(B).

4

On appeal, Ramirez raises three issues. First, he claims that the State failed to produce a sufficient foundation to admit the radar unit's measurement of 88 miles per hour. Second, he claims that there was insufficient evidence to find him guilty of speeding. Third, he asserts that the district magistrate judge erred by denying his motion for a new trial. We address his arguments in this order.

*Sufficiency of the Foundation for Admitting the Speed Measurement*

The issue of whether there was an adequate evidentiary foundation to admit evidence is a question of fact subject to the district court's discretion. We will not disturb such a decision if substantial competent evidence supports the district court's decision. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

Initially, we find that Ramirez has waived this issue by failing to object to the adequacy of the evidentiary foundation at trial. K.S.A. 60-404 generally precludes an appellate court from reviewing an evidentiary challenge absent a timely objection made on the record. *State v. Bowen*, 299 Kan. 339, 351, 323 P.3d 853 (2014). Here, Ramirez never objected to Trooper Reames' testimony at trial, so he may not challenge it on appeal. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 842-45, 348 P.3d 576 (2015) (finding that sexual offender failed to preserve his challenge to the foundation for admission of nursing notes where he initially objected, the State responded by providing additional foundation evidence, and then the offender neglected to object again before the evidence was admitted).

Nevertheless, even if Ramirez had appropriately preserved this issue for appeal, we find that his claim lacks merit. Both the State and Ramirez agree that this court's decision in *State v. Primm*, 4 Kan. App. 2d 314, 606 P.2d 112 (1980), is the proper standard for determining whether a sufficient foundation has been laid to admit speed measurements from a radar unit. See also *State v. Miller*, 240 Kan. 733, 738, 732 P.2d 756 (1987) (citing *Primm* with apparent approval).

A sufficient foundation exists to admit the speed measurement from a radar unit once the State shows that (1) the operator tested the device in accordance with accepted procedures; (2) the unit was functioning properly; and (3) the operator was qualified by training and experience to use the radar unit. *Primm*, 4 Kan. App. 2d 314, ¶¶ 2-3; See 8 Am. Jur. 2d Automobiles § 981. "The accuracy of a particular radar unit can be established by showing that the officer tested the device in accordance with accepted procedures." *Primm*, 4 Kan. App. 2d at 315. Moreover, the State is not required to present expert testimony explaining the scientific principles underlying a radar unit. 4 Kan. App. 2d at 317-18.

Here, Trooper Reames testified that he knew the unit was functioning properly on May 22, 2015, because it passed both the internal and tuning fork tests before and after his shift that day. See Annot., 47 A.L.R.3d 822 ("Among the various methods of testing the accuracy of a radar speedmeter, the most commonly employed tests are those performed by holding calibrated tuning forks in front of the speedmeter's receiver, and by driving through the radar beam a police patrol car equipped with a calibrated speedometer."). In addition, Officer Reames explained that he had received training on how to operate the "Stalker VSR2X" radar unit at the highway patrol academy and then was recertified biannually. Accordingly, we find that there was substantial competent evidence to find that the State had laid a sufficient evidentiary foundation to admit Ramirez' speed. See *Primm*, 4 Kan. App. 2d at 315-16.

6

*Sufficiency of the Evidence*

Next, Ramirez challenges the sufficiency of the evidence to convict him. When reviewing the sufficiency of the evidence, we must review all the evidence in the light most favorable to the State and must be convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In doing so, we are not to reweigh evidence, resolve evidentiary conflicts, or determine a witness' credibility. 299 Kan. at 525.

Generally, the speed limit for highways such as Kansas Highway 2 is 65 miles per hour unless the Secretary of Transportation properly alters the speed limit under certain statutes. See K.S.A. 2014 Supp. 8-1558(a)(4), (c). Ramirez admitted during trial that he was speeding, although he claimed that he was travelling closer to 74 or 75 miles per hour. He does not argue that he was traveling at a lower rate of speed on appeal. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (stating that an issue not briefed by the appellant is deemed waived and abandoned).

Rather, Ramirez maintains on appeal that there was insufficient evidence to prove that he was speeding in Harper County. The record indicates that the district magistrate judge resolved this disputed question of fact in favor of the State after hearing the testimony of both Trooper Reames and Ramirez. On redirect, Trooper Reames testified that there was a sign indicating the county line and agreed that he knew Ramirez was travelling at 88 miles per hour in Harper County because he "could see the sign." Further, Trooper Reames agreed that he had "no doubt" that he had observed Ramirez speeding in Harper County.

The district court found Trooper Reames' testimony to be credible and concluded that there was "no doubt at all" that Ramirez was travelling 88 miles per hour in Harper County. Because we are not to reweigh the evidence or determine the credibility of

7

witnesses, we cannot substitute our judgment for that of the district magistrate judge on this disputed question of fact. *Williams*, 299 Kan. at 525. Therefore, we conclude that there is substantial competent evidence in the record upon which a rational factfinder could have found Ramirez guilty beyond a reasonable doubt.

*Motion for New Trial*

Lastly, Ramirez asserts that the district magistrate judge erred by not granting his motion for a new trial. By statute, a district court may grant a defendant's motion for new trial if it is required in the interests of justice or because of newly discovered evidence. K.S.A. 2014 Supp. 22-3501. We review the district court's decision on a motion for new trial for an abuse of discretion. *State v. Soto*, 301 Kan. 969, 977, 349 P.3d 1256 (2015). A district court abuses its discretion when its decision is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *State v. Williams*, 303 Kan. 585, 593, 363 P.3d 1101 (2016).

The only assertion that Ramirez made in support of his motion for a new trial was that mile marker 16 was in Barber County. Ramirez did not include this assertion in his motion for a new trial but brought it up for the first time at the hearing on his motion for a new trial, arguing,

> "[Mile marker 16] actually is in Barber County. And I know that because I just drove out there about an hour ago. And that's actually—that mile marker is actually in Barber County.
>
> "So I think the Court should grant us a new trial so that the Court—maybe at the new trial, maybe the Court wants to go out there on location. I don't know. That's up to the Judge."

8

To establish the right to a new trial based on newly discovered evidence, a criminal defendant must establish (1) that the newly proffered evidence could not have been produced at trial with reasonable diligence; and (2) that the newly discovered evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Laurel*, 299 Kan. 668, 676, 325 P.3d 1154 (2014).

Ramirez can establish neither element. First, the location of the mile marker could have easily been established at trial, and Ramirez offered no explanation at the hearing for why he neglected to do so at trial. Second, the materiality of the evidence is not such that it would likely produce a different result upon retrial because Trooper Reames explained that he "stopped [Ramirez] for speeding on K-2 Highway [at] *about the 16, 17 milepost*." (Emphasis added.)

Moreover, as indicated above, Trooper Reames testified that he had "no doubt" that he clocked Ramirez as travelling 88 miles per hour in Harper County. Given the fact that Trooper Reames caught Ramirez speeding as he crossed from Barber County into Harper County, it is understandable that the nearest mile marker might be just inside Barber County. Likewise, this fact is consistent with the testimony given by Trooper Reames at trial, which the district magistrate judge found to be credible.

Ramirez also argues that the granting of a new trial would be in the "interest of justice" because there was insufficient evidence to find that he was speeding in Harper County and that there was an insufficient foundation to admit Trooper Reames' testimony of his speed. We have already found that these arguments lack merit. Therefore, we do not find that the district magistrate judge abused his discretion in failing to grant Ramirez a new trial.

Affirmed.