NOT DESIGNATED FOR PUBLICATION

No. 126,634

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THOMAS CHARLES RAY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Chase District Court; MERLIN G. WHEELER, judge. Oral argument held February 4, 2025. Opinion filed March 7, 2025. Affirmed.

*Brandon G. Kinney*, of Kinney and Associates, LLC, of Kansas City, Missouri, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.


Before WARNER, C.J., GARDNER and HURST, JJ.


PER CURIAM: After a bench trial, Thomas Charles Ray was found guilty of speeding 81 mph in a 65-mph zone. The district court imposed a fine and court costs. Ray appeals, contending the district court's verdict was based on insufficient evidence because the district court allowed the State to rely on a presumption of evidence rather than requiring the State to prove evidence, and the State failed to present sufficient evidence that the Kansas Highway Patrol Trooper's radar equipment was accurate. Having reviewed the record, we find no error.

1

*Factual and Procedural Background*

On March 27, 2023, around 2:20 p.m., Trooper Shane Boswell was on patrol and driving on Highway 50 east of Strong City when he observed a semi-truck traveling more than the posted speed limit of 65 mph. He based this observation on his own speed and the semi's speed in comparison to other vehicles around it. After his visual observation, Boswell used his Stalker radar unit, which read that the semi was traveling at 81 mph. Bowell testified that his visual observation of the semi's speed matched the radar unit's reading. Upon seeing the radar reading, Bowell activated his lights, waited for the semi to pass him, and then pulled it over.

Boswell determined that Ray was the driver and told him he had been stopped for speeding. Ray acknowledged he had been speeding but told Boswell it was because a truck had been traveling too closely behind him and he was trying to create space between the two vehicles. Boswell issued Ray a speeding ticket.

On June 1, 2023, the district court held a bench trial on Ray's citation. Boswell testified he had used the same radar unit for four years and he had been trained to operate it. The radar unit had been calibrated and certified by the manufacturer and, according to Boswell, also performs an internal calibration test. The unit also came with tuning forks, which troopers use to ensure the unit produces accurate readings. Bowell's tuning forks were certified as accurate. Boswell verified his radar unit's accuracy at the beginning and end of his shift on March 27, 2023, by using the tuning forks and the unit's internal calibration test. He testified that the unit was "extremely accurate," and the radar's variance in speed is one mph when stationary and two mph when in motion.

Ray also testified at the bench trial. He had been employed as an over-the-road trucker for 37 years. He admitted he was speeding, but testified he was going 66 or 67 mph, not 81 mph. He also admitted he had received a verbal warning from a different law

2

enforcement officer two weeks earlier. He testified that after the verbal warning, he had reported to the company that he worked for and that owned the truck that he thought the speedometer was not accurately reporting his speed. This is because the officer who gave him the verbal warning told him he was traveling at one speed, but his speedometer showed another.

After considering the evidence, the district court judge found Ray guilty of speeding and imposed an $81 fine and $108 in court costs. Ray timely appeals.

*Does Sufficient Evidence Support Ray's Speeding Conviction?*

On appeal, Ray argues that insufficient evidence supports his conviction of driving 81 mph in a 65-mph zone. He argues the radar equipment was old and unreliable, yet the district court improperly presumed that the radar unit was accurate. He contends that the district court's reliance on the radar evidence was improper because the equipment had not been recently calibrated, and Boswell had not been recertified on the equipment since he had been issued the radar unit four years earlier.

In response, the State argues that sufficient evidence supports Ray's conviction because Ray failed to make a contemporaneous objection to the radar evidence's foundation at trial, rendering it unchallengeable on appeal. The State alternatively argues that even if the issue was preserved for appeal, the district court did not apply an evidentiary presumption, a proper foundation supported admission of the radar evidence, and sufficient evidence supports Ray's conviction.

Having reviewed Ray's brief and having heard his oral argument, we do not agree that Ray is arguing a lack of foundation for admission of the radar's evidence. He does not, for example, cite cases establishing the test for proper foundation for admission of radar evidence. See, e.g, *State v. Primm*, 4 Kan. App. 2d 314, 315-16, 606 P.2d 112

3

(1980); *State v. Anderson*, No. 114,447, 2016 WL 3961436, at *4 (Kan. App. 2016) (unpublished opinion). Nor does he argue error in admitting any evidence, including evidence showing sufficient foundation for the radar evidence. If, however, he challenges the admissibility of the radar evidence, we agree this issue is unpreserved for the reasons stated at more length in the State's brief. See K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

Rather, Ray asserts that the district court gave too much credence to Boswell's testimony about the accuracy of his radar equipment. We thus find that Ray has no preservation problem for his argument on appeal that the district court improperly found sufficient evidence to convict him of going 81 mph in a 65-mph zone.

*Standard of Review*

When reviewing the sufficiency of the evidence to support a conviction, an appellate court "looks at all the evidence in the light most favorable to the State to decide whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, we do not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility." *State v. Anderson*, 318 Kan. 425, 441, 543 P.3d 1120 (2024). Generally, appellants need not have challenged the sufficiency of the evidence at the district court to preserve that issue for appeal. *State v. Hilyard*, 316 Kan. 326, 330, 515 P.3d 267 (2022).

The appellant bears a high burden to succeed on a sufficiency of the evidence claim, and "only when the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt should we reverse a guilty verdict." *State v. Meggerson*, 312 Kan. 238, 247, 474 P.3d 761 (2020). As we have often recognized, "a conviction of even the gravest offense can be based entirely on circumstantial evidence." *State v. Banks*, 306 Kan. 854, 858, 397 P.3d 1195 (2017).

Speeding is a strict liability crime. See *State v. Lewis*, 263 Kan. 843, Syl. ¶ 5, 953 P.2d 1016 (1998). Although the act of speeding must be voluntary, *State v. Dinkel*, 311 Kan. 553, 559-60, 465 P.3d 166 (2020), the offense requires no proof of intent or other mens rea. See K.S.A. 21-5201(a) ("A person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession."). To prove that Ray was speeding, the State had to prove that he was voluntarily operating a vehicle in excess of 65 mph. K.S.A. 8-1558(a)(4). But as Ray notes, the extent of his speed is also important to him because he has a commercial driver's license.

*Alleged Presumption*

Ray primarily argues that the district court used an improper rebuttable presumption, which reduced or shifted the State's burden of proof, making his conviction unconstitutional and unsupported by sufficient evidence. The State counters that the district court's choice of words does not indicate he applied any presumption but merely how he weighed the evidence.

Ray asserts that the district court judge applied a rebuttable presumption that the State's equipment is always functioning properly and must be relied upon by the district court. Ray relies on the statements we have emphasized below in the district court's ruling:

> "The evidence has indicated *that the equipment utilized by the State to establish the alleged speed limit was certified and was operated in accordance with the manufacturer's operating requirements, as well as the Highway Patrol's protocol for the operation of that equipment.*
> "There is no question, particularly based upon the defendant's own testimony, that he was operating in excess of the speed. And as defense counsel's noted, the question is, what was he operating?

"I note that the defendant was operating a 2015 tractor. If the defense is going to argue that a piece of equipment should not be relied upon because of age, it certainly strikes me that a 2015 piece of equipment is probably more likely to have issues with regard to accuracy than a piece of equipment that's been issued within the last four years and that is *operated with a number of internal, as well as external controls to assure its continuing accuracy.*

"While the defendant's testimony was—might support a claim that he was driving 67 mile per hour, he also has admitted that he had a prior warning with that same vehicle, that it was operating in excess of what he thought the speedometer would read, and *there's no basis for me to conclude at this point that the speed was anything different than as alleged by the State.*

"Therefore, I find Mr. Ray guilty of the traffic infraction of operating a motor vehicle in the excess of the speed, 81 mile per hour in a 65-mile-per-hour zone." (Emphasis added.)

Ray adds that rebuttable presumptions in criminal cases are unconstitutional "if they relieve the State of its burden of persuasion on an element of an offense." *State v. Harkness*, 252 Kan. 510, Syl. ¶ 13, 847 P.2d 1191 (1993). A rebuttable presumption typically "'does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the accused persuades the jury otherwise. That is, once the State proves certain facts, the jury must infer [the element] from those facts, unless the accused proves otherwise.'" *State v. Holder*, 314 Kan. 799, 805, 502 P.3d 1039 (2022) (quoting *Harkness*, 252 Kan. at 526). Prohibited rebuttable presumptions apply to elements of the crime, not to evidence of the crime. See *Harkness*, 252 Kan. 510, Syl. ¶ 13.

Under K.S.A. 21-5108(a), "[i]n all criminal proceedings, the state has the burden to prove beyond a reasonable doubt that a defendant is guilty of a crime. This standard requires the prosecution to prove beyond a reasonable doubt each required element of a crime." Thus, "rebuttable presumptions are unconstitutional if they relieve the State of its burden of persuasion on an element of an offense or if the suggested conclusion is not

one that reason and common sense justify in light of the proven facts before the jury." *Harkness*, 252 Kan. 510, Syl. ¶ 13. Ray contends this burden shifting happened here.

After assessing the district court judge's comments in light of the law surrounding rebuttable presumptions, we disagree. The district court judge did not use a rebuttable elemental presumption; the judge merely explained which evidence he credited over other evidence and why. No language in the court's ruling suggests that the district court applied any presumption, or that the judge felt somehow compelled to find any element had been met or any evidence of the crime had been established. In short, the district court did not assume that Ray was speeding until proven otherwise. Rather, the judge weighed the accuracy of the radar against the accuracy of the speedometer, found the radar more accurate, and stated why. Weighing the evidence of the crime does not violate K.S.A. 21-5108(a). And on appeal, we do not reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility. *Anderson*, 318 Kan. at 441.

Ray argued at trial that his speedometer showed a speed (66 mph) significantly lower than the speed shown on Boswell's radar unit (81 mph) and the judge should credit his speedometer over the radar because the radar had not been recertified since it had been issued four years earlier. And on appeal, Ray adds that old equipment, certifications, and protocols are outdated and should be changed or discredited.

The district court gave several reasons for crediting the radar more than Ray's speedometer. First, it found, using Ray's age-based logic, that "a 2015 piece of equipment [Ray's semi] is probably more likely to have issues with regard to accuracy than a piece of equipment that's been issued within the last four years [Boswell's radar]." And Ray admitted that he had been stopped approximately two weeks earlier in the same semi and had been issued a warning for speeding, which led him to believe that his speedometer was not accurate. Our review of the evidence reveals none suggesting that the semi's speedometer was more reliable than Boswell's radar.

7

Second, the district court found that the radar unit was "operated with a number of internal, as well as external controls to assure its continuing accuracy." Ray made no similar showing as to the semi's controls but, to the contrary, admitted his reasonable suspicion that the semi's speedometer was inaccurate.

The district court also found the radar more accurate because "evidence has indicated that the equipment utilized by the State to establish the alleged speed limit was certified and was operated in accordance with the manufacturer's operating requirements, as well as the Highway Patrol's protocol for the operation of that equipment." The judge's statements were based on the evidence, and that evidence was not refuted.

The district court's decision to give more credit or weight to Boswell's radar than to Ray's speedometer was not made in a vacuum. The district court had heard Boswell's unchallenged testimony that he had tested the radar before and after his shift by using the tuning forks, that he had performed the radar's internal calibration test at the beginning of his shift, that the radar was functioning properly, that he was certified to use the radar, and that he relied on his training when finding Ray was going 81 mph. The State laid a proper foundation for the radar evidence. See *Primm*, 4 Kan. App. 2d at 315-16; *State v. Ibrahim*, No. 127,186, 2025 WL 399379, at *2 (Kan. App. 2025) (unpublished opinion) (finding proper foundation when trooper testified that he had tested radar system before and after his shift, that radar was working properly, that he was certified to use the radar, and that he relied on his training when doing so); *State v. Bahney*, No. 126,055, 2024 WL 657925, at *3 (Kan. App. 2024) (unpublished opinion) (finding proper foundation of radar evidence when trooper tested radar before and after shift, it was working properly that day, and he was certified to use equipment).

The district court had also heard the evidence that Ray now focuses on—that Boswell's radar equipment had not been calibrated since the calibration certificate was issued by the manufacturer four years earlier, that the radar equipment had not been

through routine maintenance for at least four years, that the radar might have a three-year warranty, and that Boswell had not been recertified on the radar since he first received the equipment four years earlier. But we cannot reweigh evidence, resolve evidentiary conflicts, or reassess witness credibility, as Ray desires.

The district court also heard testimony by Boswell and by Ray as to the speed each believed the semi was going, based on their differing observations. This, too, was proper. Troopers and semi drivers can estimate the speed at which the vehicle was moving. See *Hampton v. State Highway Commission*, 209 Kan. 565, 583, 498 P.2d 236 (1972) (holding "we long ago recognized that lay opinions on the observed speed of an automobile are proper"). As our Supreme Court held in *Miller v. Jenness*, 84 Kan. 608, Syl., 114 P. 1052 (1911):

> "The rate of speed of an automobile on a public highway is a matter of which the people generally in this country have some knowledge. It is not a matter exclusively of expert knowledge or skill. When the rate of speed of such a vehicle is material in an action, any person of ordinary ability and means of observation who may have observed the vehicle may give his estimate as to the rate of speed at which it was moving".

"[A] trial judge is allowed to use his or her *common knowledge and experience* to determine the credibility of a witness and assess the weight of a witness' testimony." *State v. Dority*, 50 Kan. App. 2d 336, 343, 324 P.3d 1146 (2014). By using his common knowledge and experience, coupled with the evidentiary foundation laid by Boswell, the district court credited the radar over Ray's speedometer. Considering all the evidence and viewing the court's statements in context, we find the district court's statements do not show that Ray applied a rebuttable presumption. See *State v. Weber*, No. 126,376, 2024 WL 2795765, at *5 (Kan. App. 2024) (unpublished opinion) (holding district court did not apply rebuttable presumption when it credited trooper's radar unit over defendant's speedometer reading).

Ray also makes a policy argument, inviting this panel to mandate or apply certification standards for radar equipment and its operators, as do other jurisdictions, including Washington, Pennsylvania, Tennessee, and the federal government. But Ray cites no authority showing that these statutes or regulations apply in Kansas. Therefore, he has waived this argument. See *Meggerson*, 312 Kan. at 246 (holding failure to support point with pertinent authority or failure to show why point is sound despite lack of supporting authority or in face of contrary authority is like failing to brief issue). And "[c]ourts do not write legislation. That is the function of the legislature." *State v. One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 761, 258 P.2d 225 (1953). See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts.").

Viewing all the evidence in the light most favorable to the State, we find that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt of going 81 mph in a 65-mph zone.

Affirmed.