**STATE OF HAWAII**, Plaintiff–Appellee, v. **PENI TAILO, JR.**, Defendant–Appellant

NO. 13540

(Traffic No. TR142A; Citation No. 2667685MO)

AUGUST 30, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

Defendant–Appellant Peni Tailo, Jr. (Appellant) appeals from his conviction for driving a motor vehicle in excess of the legal speed limit in violation of Hawaii Revised Statutes (HRS) § 291C–102. The State's evidence consisted of the testimony of a single police officer who relied upon a reading from a K–15 radar speed detection device (K–15 gun) which clocked the speed of Appellant's vehicle at seventy miles per hour in a fifty–five mile per hour zone. The issue on appeal is whether the State

must prove the accuracy of a tuning fork used in verifying the accuracy of the K–15 gun before results of that device are admissible as evidence of a speeding violation. We hold that the officer's testimony at trial that he conducted a tuning fork test which indicated that the K–15 gun was accurately calibrated created a prima facie presumption that the tuning fork was itself accurately calibrated. Finding no merit to Appellant's other contention, we affirm the judgment of conviction.

I.

At trial, the police officer testified that prior to stopping Appellant for speeding he performed two tests to check the accuracy of the radar gun. The first test was an external test whereby the officer verified the K–15 gun's accuracy by striking a tuning fork, which was gauged so as to register a speed reading of 50 m.p.h. when held in front of the gun. The second test performed involved the utilization of an internal calibration unit within the radar device itself. Both tests indicated the K–15 gun was accurately calibrated. (Tr. 11–16–88 at 5.)

On cross–examination, the officer testified that the K–15 gun was calibrated at the factory and that his methods for testing the gun were designed to determine "whether or not the unit was functioning properly"; "not [to] calibrate the gun" which "has to be done by a technician." *Id.* at 10. Further, he testified that he did not independently verify the accuracy of the tuning fork used to test the accuracy of the K–15 gun. *Id.* at 12.

At the close of the State's case, Appellant moved for a directed verdict on the ground that the State failed to prove that the K–15 gun was accurately calibrated, and hence accurate in determining the speed of his vehicle. The trial court denied the motion and found Appellant guilty as charged.

II.

Appellant contends that the trial court erred by denying his motion for directed verdict. He maintains that the State failed to prove that the K–15 gun accurately determined the speed of his vehicle since no evidence was introduced as to the accuracy of the tuning fork used to test the radar gun.

## A.

Although the K–15 radar gun has been in use by the police in this jurisdiction for over a decade, this is the first occasion in which we have addressed the question of the admissibility of radar gun evidence as proof of a speeding violation.

The scientific principles upon which the radar gun is based are well established. The radar gun is a system which transmits a continuous flow of microwaves on a constant frequency which are reflected back whenever they strike a target. When the target is an approaching vehicle, the speed of the vehicle causes the deflected waves to return on a different and higher frequency than those sent out. A phenomena known as the Doppler effect posits that the faster the vehicle is moving into the radar transmis-. sions, the higher the frequency of the reflected waves received by the radar gun. The radar gun measures the difference in the frequencies of the transmitted wave and the received wave, which enables it to use the Doppler effect to calculate the speed of the approaching vehicle. *See* Kopper, *The Scientific Reliability of Radar Speedmeters*, 16 Md. L. Rev. 1 (1956).

Because of the strength of the scientific principles on which the radar gun is based, every recent court which has dealt with the question has taken judicial notice of the scientific reliability of radar speedmeters as recorders of speed. *See State v. Gerdes*, 291 Minn. 353, 191 N.W.2d 428 (1971); *People v. MacLaird*, 264 Cal. App. 2d 972, 71 Cal. Rptr. 191 (1968); *State v. Tomanelli*, 153 Conn. 365, 216 A.2d 625 (1966); and Annotation, *Proof, by Radar or Other Mechanical or Electronic Devices, of Violation of Speed Regulations*, 47 A.L.R.3d 822, 831–35 (1973). These courts have also consistently held that evidence of the accuracy of the particular radar unit is necessary to sustain a conviction for speeding obtained solely by radar. *State v. Primm*, 4 Kan. App. 2d 314, 606 P.2d 112 (1980); Annotation, *Proof, by Radar or Other Mechanical or Electronic Devices, of Violation of Speed Regulations*, 47 A.L.R.2d 822, 837–39 (1973). "The accuracy of a particular radar unit can be established by showing that the operator tested the device in accordance with accepted procedures to determine that the unit was functioning properly and that the operator was qualified by training and experience to operate the unit." *State v. Spence*, 418 So. 2d 583, 588 (La. 1982); *Gerdes, supra*; *Primm, supra*.

In the instant case, the officer testified that he was formally trained and certified to use the K–15 gun, and that prior to clocking Appellant's vehicle, he swept the target area for interference and received none. The officer further testified that he performed both an internal calibration test, and an external calibration test involving a tuning fork prior to clocking Appellant's vehicle. Courts have found both methods to be acceptable means of proving radar accuracy. *See People v. Lynch*, 61 Misc. 2d 117, 304 N.Y.S.2d 985 (1969); *State v. Primm*, 4 Kan. App. 2d 314, 606 P.2d 112 (1980); *State v. Bechtel*, 24 Ohio App. 3d 72, 24 Ohio B.R. 126, 493 N.E.2d 318 (1985); *State v. Shears*, 648 P.2d 841 (Okla. 1982); and *State v. Mills*, 99 Wis. 2d 697, 299 N.W.2d 881 (1981). A special tuning fork can be used to check the calibration of the radar gun. The tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork. To test the accuracy of the radar gun with the fork, the officer strikes the fork to get it vibrating and then holds the fork in front of the radar head. The radar unit will then read the fork's vibration and display the read Doppler frequency value for comparison by the officer with the imprinted value on the fork. *State v. Gerdes*, 191 N.W. 2d 428, 432 (Minn. 1971). No evidence was introduced by the State, however, establishing the accuracy of the tuning fork used in the test. Appellant maintains that the State's failure to do so rendered admission of the speeding evidence obtained from the K–15 gun legal error.

The few courts which have considered this issue have split over requiring proof that the tuning fork used to test a radar device must itself be proven accurate. Those courts requiring such proof have done so by reasoning that the value of the tuning fork test depends upon the accuracy of the particular tuning fork against which the radar gun is checked. *See, e.g., St. Louis v. Boecker*, 370 S.W.2d 731, 736 (Mo. App. 1963). Other courts, however, have held that the government is not required to prove the accuracy of the tuning fork since requiring "[s]uch a chain of evidence might . . . [require the prosecution] to proceed ad infinitum." *State v. Snyder*, 184 Neb. 465, 466, 168 N.W.2d 530, 531 (1969). *Accord Shears v. State*, 648 P.2d 841 (Okla. 1982).

We are of the opinion that those cases holding that the government is not required to prove the accuracy of the tuning fork are of the better view. It is a daily occurrence in our district courts for police officers to rely upon the accuracy of testing devices used to vouch for the accuracy of their radar guns. Requiring proof of the accuracy of those testing devices in

every case would impose an inordinate burden upon the State and a great waste of judicial time. Accordingly, we hold that once the State puts in evidence that the police conducted a tuning fork test indicating the K–15 gun was properly calibrated, this evidence creates a prima facie presumption that the tuning fork itself was accurately calibrated.

In the instant case, the citating officer testified at trial that prior to clocking Appellant's vehicle, he "took a tuning fork . . . stamped 50 (fifty) MPH at the factory, . . . tapped it . . . [and] held it in front of the [K–15] unit and got a reading of five zero . . . [which] indicated that the unit was functioning properly." (Tr. 11–16–89 at 5–6). The tuning fork used to test the K–15 gun was therefore entitled to a presumption of accuracy and the burden shifted to Appellant to prove otherwise. Appellant, having failed to introduce any evidence impeaching the accuracy of the tuning fork, failed . to rebut this presumption. Accordingly, the trial court correctly concluded that there was sufficient evidence of the K–15 gun's accuracy to deny Appellant's motion for directed verdict.

Finding no merit to appellant's remaining contention, we affirm the judgment of conviction.

*Roger C. Lerud* for Defendant–Appellant.

*James M. Anderson*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.