Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000480
18-JUN-2020
07:45 AM

NO. CAAP-18-0000480

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ROBERT Z. GEIS, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
SOUTH KOHALA DIVISION
(CASE NO. 3DTC-17-051834)

SUMMARY DISPOSITION ORDER
(By: Chan, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Robert Z. Geis (**Geis**) was convicted by the District Court of the Third Circuit, South Kohala Division, State of Hawaiʻi,[1] of excessive speeding in violation of Hawaii Revised Statutes (**HRS**) § 291C-105.[2] The trial court entered a judgment of conviction on May 17, 2018. Geis appeals from the "Judgment and Notice of Entry of Judgment" (**Judgment**) filed on May 21, 2018. For the reasons explained below, we affirm the Judgment.

---

[1] The Honorable Bruce A. Larson presided.

[2] HRS § 291C-105 (2007) provides, in relevant part:

**Excessive speeding.** (a) No person shall drive a motor vehicle at a speed exceeding:

. . . .

  (2)  Eighty miles per hour or more irrespective of the applicable state or county speed limit.

## BACKGROUND

On July 3, 2017, Hawaiʻi County Police Department (**HCPD**) officer Kimo Keliipaakaua, using a Stalker DSR 2X radar device manufactured by Applied Concepts, Inc., determined that Geis was operating his vehicle on a public road at a speed of 85 miles per hour (**MPH**).  Officer Keliipaakaua cited Geis for excessive speeding.  Geis contested the citation.  A bench trial was conducted on May 17, 2018.  The trial court found Geis guilty.  This appeal followed.

## DISCUSSION

Geis contends that the trial court erred by allowing Officer Keliipaakaua to testify about the speed displayed on his Stalker DSR 2X radar device without proper foundation, and that without evidence of the radar speed measurement, the evidence was insufficient to convict Geis.

"The determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse."  State v. Gonzalez, 128 Hawaiʻi 314, 325, 288 P.3d 788, 799 (2012) (cleaned up) (quoting State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d 1227, 1233 (2009)).

To lay a foundation for the introduction of a radar speed measurement, the State must demonstrate that: **(1)** the police officer who used the device was <u>trained</u> as required by the device manufacturer; and **(2)** the device's accuracy was <u>tested</u> according to manufacturer-recommended procedures and was operating properly prior to use.  See Gonzalez, 128 Hawaiʻi at 324-27, 288 P.3d at 798-801.  As to the training prong, the State must show **(a)** what the manufacturer's training requirements were, and **(b)** what training was actually received by the police officer operating the device.  See State v. Amiral, 132 Hawaiʻi 170, 178, 319 P.3d 1178, 1186 (2014) (citing Gonzalez, 128 Hawaiʻi at 327, 288 P.3d at 801).

2

### A. The State established that Officer Keliipaakaua was qualified to operate his Stalker DSR 2X radar.

Officer Keliipaakaua testified that he received training on Doppler-based radar speed detection devices such as the Stalker DSR 2X during HCPD recruit school in 2008-2009. He received a National Highway Traffic Safety Administration (**NHTSA**) manual for basic training and radar speed measurement, and was trained according to NHTSA standards. The training included field exercises. He passed the test to use the radar. He testified that he also received training in the testing and operation of the Stalker DSR 2X from Applied Concepts, Inc. in December 2015. Applied Concepts' training requirement is that the operator read the manual for the device.[3] Officer Keliipaakaua received and read the manufacturer's manual for his Stalker DSR 2X. He also received classroom and field training from the manufacturer's representatives. He passed a test, which qualified him to be an instructor for using the Stalker DSR 2X. We hold that the State laid sufficient foundation for the training prong by establishing what Applied Concepts' training requirements were, and that Officer Keliipaakaua actually received training from, and was qualified by, the manufacturer. See Amiral, 132 Hawaiʻi at 178, 319 P.3d at 1186; Gonzalez, 128 Hawaiʻi at 327, 288 P.3d at 801.

### B. The State laid a proper foundation for accuracy of the radar device.

Officer Keliipaakaua testified that on the day he ticketed Geis, he tested and operated his assigned Stalker DSR 2X radar according to the contents of the manual that came with the device,[4] the contents of the manual he received when he was

---

[3]    Geis argues that Officer Keliipaakaua's testimony that Applied Concepts did not require formal training is inadmissible hearsay. Geis did not object to the testimony at trial and has therefore waived this challenge on appeal. See State v. Vliet, 91 Hawaiʻi 288, 298-99, 983 P.2d 189, 199-200 (1999).

[4]    The manual shown to Officer Keliipaakaua at trial was the one he brought with him to court. It came with the Stalker DSR 2X he was issued

(continued...)

trained by the manufacturer's representatives, and the actual training he received from the manufacturer. He described the device's two internal self-checks and how he performed the accuracy test using the tuning forks that come with the device. He testified that his Stalker DSR 2X radar tested properly before and after his shift on the day he ticketed Geis. The State satisfied the foundational requirements for admitting the radar speed measurement into evidence under <u>Gonzalez</u>, 128 Hawaiʻi at 324-27, 288 P.3d at 798-801.

### C.     The "calibration" issue.

Geis argues the State failed to establish that the radar used by Officer Keliipaakaua was properly "calibrated."[5] On cross-examination, Officer Keliipaakaua testified that the last time the radar device that targeted Geis was "calibrated" was September 2012 (almost five years before he cited Geis). Officer Keliipaakaua testified that he does not "calibrate" his radar device. Geis cites <u>State v. Manewa</u>, 115 Hawaiʻi 343, 167 P.3d 336 (2007) and <u>State v. Wallace</u>, 80 Hawaiʻi 382, 910 P.2d 695 (1996) in support of his argument that the State failed to show the radar gun itself was properly "calibrated."

As we explained in <u>State v. Weber</u>, ___ Hawaiʻi ___, ___ P.3d ___, No. CAAP-18-0000478 (Haw. App. June 8, 2020), <u>Manewa</u> and <u>Wallace</u> are both distinguishable on their facts. In <u>Manewa</u> and <u>Wallace</u> there was no evidence that the State's witnesses

---

[4](...continued)
after he cited Geis. He explained that the manual contains the same information as the manual he had when he cited Geis.

[5]     The supreme court mentioned the calibration issue in <u>Amiral</u>, but that case was decided based on the State's failure to lay foundation for the officer's training, and the calibration issue was not reached. 132 Hawaiʻi at 179, 319 P.3d at 1187. <u>Amiral</u> and <u>Assaye</u> both involved the use of a Laser Technology Incorporated 20-20 UltraLyte laser gun by the Honolulu Police Department, rather than the Applied Concepts, Inc. Stalker DSR 2X radar used by the HCPD; it is not at all clear from the cases whether a laser gun (which uses light waves) is "calibrated" in the same manner as a radar gun (which uses radio frequency waves).

We did not reach the calibration issue in <u>State v. Portillo</u>, No. CAAP-18-0000949, 2020 WL 1879621 (Haw. App. Apr. 15, 2020) (SDO) (involving the Kauaʻi Police Department's use of an unidentified radar gun) because it had been waived. <u>Id.</u> at *2.

confirmed the accuracy of their respective laboratory scales by, for example, weighing objects of a known, certified weight before or after weighing the drug evidence at issue in those cases. However, in State v. Tailo, 70 Haw. 580, 779 P.2d 11 (1989), a case involving a radar gun, the supreme court stated:

> ***A special tuning fork can be used to check the calibration of the radar gun.*** The tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork. To test the accuracy of the radar gun with the fork, the officer strikes the fork to get it vibrating and then holds the fork in front of the radar head. The radar unit will then read the fork's vibration and display the read Doppler frequency value for comparison by the officer with the imprinted value on the fork. . . .
>
> . . . .
>
> . . . [W]e hold that ***once the State puts in evidence that the police conducted a tuning fork test indicating the [radar] gun was properly calibrated, this evidence creates a prima facie presumption that the tuning fork itself was accurately calibrated.***

Id. at 583, 779 P.2d at 13-14 (emphasis added). "Calibrate" means "to measure against a standard[.]" Calibrate, Merriam-Webster, https://www.merriam-webster.com/dictionary/calibrate (last updated June 2, 2020).

In this case Officer Keliipaakaua testified that he measured his radar device's accuracy against a standard — two tuning forks that came with the device. Geis produced no evidence to rebut the prima facie presumption that the tuning forks were accurately calibrated. The trial court stated:

> Uh, now, we have this information on the side regarding periodic calibration. And one of the things was to determine whether it was measuring the correct speed within I think a plus or minus one mile per hour. Well that's part of the testing that the officer does with the tuning forks. He's testing at 20/45 -- or 25 and 40 miles an hour, and that test within plus or minus one mile per hour. So it would appear that at least one aspect of the calibration is actually being performed on a daily basis, uh, both at the beginning/at the end of the shift.

We agree that Officer Keliipaakaua's testimony established that he in fact verified that his Stalker DSR 2X was "calibrated" to accurately measure the speed of Geis's vehicle. We hold that the trial court did not abuse its discretion by

finding that the State laid a proper foundation for admitting Officer Keliipaakaua's 85-MPH radar measurement of the speed of Geis's vehicle into evidence. That evidence was sufficient to support Geis's conviction for excessive speeding.

**CONCLUSION**

Based upon the foregoing, we hold that the trial court did not abuse its discretion by admitting the radar measurement of the speed of Geis's vehicle into evidence. Accordingly, the "Judgment and Notice of Entry of Judgment" filed on May 21, 2018, is affirmed.

DATED: Honolulu, Hawai'i, June 18, 2020.

On the briefs:

| | |
|---|---|
| E. Britt Bailey,<br>for Plaintiff-Appellee. | /S/ Derrick H.M. Chan<br>Presiding Judge |
| Joanne B. Badua,<br>for Defendant-Appellant. | /s/ Keith K. Hiraoka<br>Associate Judge |
| | /s/ Clyde J. Wadsworth<br>Associate Judge |