Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000760
19-JUN-2020
11:06 AM

NO. CAAP-18-0000760

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SOLOMON K.I. DELA CRUZ, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(Case No. 3DTC-17-040836)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Solomon K.I. Dela Cruz (**Dela Cruz**) was convicted by the District Court of the Third Circuit, South Kohala Division, State of Hawai'i, of excessive speeding in violation of Hawaii Revised Statutes (**HRS**) § 291C-105. The trial court entered a "Judgment and Notice of Entry of Judgment" (**Judgment**) on September 14, 2018.[1] For the reasons explained below, we affirm the Judgment.

## BACKGROUND

On November 16, 2017, Hawai'i County Police Department (**HCPD**) officer Kimo Keliipaakaua, using a Stalker DSR 2X radar device manufactured by Applied Concepts, Inc., determined that Dela Cruz was operating his vehicle at a speed of 82 miles per hour (**MPH**). Officer Keliipaakaua cited Dela Cruz for excessive speeding. Dela Cruz contested the citation. A bench trial was

---

[1] The Honorable Mahilani E.K. Hiatt signed the Judgment.

conducted on June 21, 2018.[2]  Officer Keliipaakaua was the only witness called.  The trial court found Dela Cruz guilty.  This appeal followed.

## DISCUSSION

Dela Cruz raises three points of error, contending that: (1) the charge was defective; (2) the trial court erred by allowing Officer Keliipaakaua to testify about the contents of training and device manuals over Dela Cruz's hearsay[3] and best evidence[4] objections; and (3) the trial court erred by allowing Officer Keliipaakaua to testify about the speed displayed on his Stalker DSR 2X radar device without proper foundation.

### 1.    The oral charge was sufficient.

"Whether a charge sets forth all the essential elements of a charged offense is a question of law reviewed under the right/wrong standard."  State v. Wheeler, 121 Hawai'i 383, 390, 219 P.3d 1170, 1177 (2009) (cleaned up).

Dela Cruz did not object to the charge at trial.  The Hawai'i Supreme Court has held:

> [W]e **liberally construe** charges challenged for the first time on appeal.  Under this approach, there is a presumption of validity[] for charges challenged subsequent to a conviction.  In those circumstances, this court will not reverse a conviction based upon a defective indictment [or complaint] unless the defendant can show **prejudice** or that the indictment [or complaint] **cannot within reason be construed to charge a crime.**

Wheeler, 121 Hawai'i at 399-400, 219 P.3d at 1186-87 (cleaned up) (emphasis added).  The supreme court "has also recognized that

---

[2]    The Honorable Bruce A. Larson presided.

[3]    Rule 802, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016) (**HRE**) provides:

> Hearsay is not admissible except as provided by these rules, or by other rules prescribed by the Hawaii supreme court, or by statute.

[4]    HRE Rule 1002 (2016) provides, in relevant part:

> To prove the content of a writing, . . . the original writing[] . . . is required, except as otherwise provided in these rules or by statute.

2

one way in which an otherwise deficient count can be reasonably construed to charge a crime is by **examination of the charge as a whole**." State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011) (emphasis added).

Dela Cruz was orally arraigned on the day of his trial. The deputy prosecuting attorney charged:

> On or about the 16th day of November, 2017, in South Kohala, County and State of Hawaii, Solomon Dela Cruz did drive a motor vehicle at a speed exceeding 80 miles per hour or more irrespective of the applicable State or County speed limit, thereby committing the offense of Excessive Speeding, in violation of Section 291C-105(a)(2) Hawaii Revised Statutes, as amended.

HRS § 291C-105 (2007) provides, in relevant part:

> **Excessive speeding.** (a) No person shall drive a motor vehicle at a speed exceeding:
>
> . . . .
>
> (2) Eighty miles per hour or more irrespective of the applicable state or county speed limit.

Dela Cruz argues the State failed to allege that his offense took place on a "highway." Although HRS § 291C-105 does not specify that the offense must take place on a highway, Dela Cruz points out that HRS § 291C-21 states: "The provisions of [section 291C-105] relating to the operation of vehicles refer exclusively to the operation of vehicles upon highways except, [sic] where a different place is specifically referred to in a given section."

Dela Cruz does not contend that he was prejudiced by the failure of the oral charge to state that he was operating a vehicle on a highway. Accordingly, Dela Cruz must show that the oral charge "cannot within reason be construed to charge a crime" even "by examination of the charge as a whole." Tominiko, 126 Hawai'i at 76, 266 P.3d at 1130 (citations omitted). In addition, "in determining whether a defendant has been adequately informed of the charges against [them], the appellate court can consider other information in addition to the charge that may have been provided to the defendant during the course of the case up until the time defendant objected to the sufficiency of the charges against [them]." Wheeler, 121 Hawai'i at 396, 219 P.3d

at 1183 (citing cases); see also State v. Hitchcock, 123 Hawaiʻi 369, 379, 235 P.3d 365, 375 (2010) (where defendant argued oral charge was defective for the first time on appeal, supreme court examined information provided or supplied by the prosecution to defendant during trial).  During Dela Cruz's trial the State's witness, Officer Keliipaakaua, testified that Dela Cruz was traveling on Route 200 when he was cited for excessive speeding, and that Route 200 is "a public road, street, or highway[.]"  We hold that the oral charge together with the information provided to Dela Cruz at trial was sufficient to inform Dela Cruz of the charge against him.

### 2.  The trial court did not err by overruling Dela Cruz's evidentiary objections.

At trial the State asked Officer Keliipaakaua to describe the contents of the National Highway Traffic Safety Administration radar device manual he received when he was in recruit school.  Dela Cruz objected based on hearsay.[5]  The trial court overruled the objection.  Officer Keliipaakaua responded.  The State then asked Officer Keliipaakaua to describe the contents of the manual that he received when he was trained to use the Stalker DSR 2X radar by Applied Concepts' instructors in December 2015.  Dela Cruz objected based on hearsay.[6]  The trial court overruled the objection.  Officer Keliipaakaua responded.

The purpose of the State's questions was to lay the foundation for admission of Officer Keliipaakaua's testimony about Dela Cruz's speed as indicated on the Stalker DSR 2X radar device — to establish that Officer Keliipaakaua was trained in the use of radar devices and in accordance with the manufacturer's manual requirements for the Stalker DSR 2X radar, and that Officer Keliipaakaua tested and operated the device as instructed by the manufacturer's manual for the device.  The Hawaii Rules of Evidence (**HRE**) do not apply to preliminary

---

[5]     Dela Cruz did not object based on the best evidence rule, and accordingly waived that objection.

[6]     Dela Cruz again did not object based on the best evidence rule, and accordingly waived that objection.

questions concerning the foundation for admissibility of a radar speed measurement. State v. Rezentes, No. CAAP-15-0000294, 2016 WL 6330390, at *2 (Haw. App. Oct. 28, 2016) (SDO) (citing HRE Rule 104(a)[7] and HRE Rule 1101(d)(1)[8]). The trial court did not err in overruling Dela Cruz's objections.

### 3.    The State laid a proper foundation for admission of the radar speed measurement.

To lay a foundation for the introduction of a radar speed measurement, the State must demonstrate that: **(1)** the police officer who used the device was <u>trained</u> as required by the device manufacturer; and **(2)** the device's accuracy was <u>tested</u> according to manufacturer-recommended procedures and was operating properly prior to use. See State v. Gonzalez, 128 Hawaiʻi 314, 324-27, 288 P.3d 788, 798-801 (2012). "The determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse." Id. at 325, 288 P.3d at 799 (cleaned up) (quoting State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d 1227, 1233 (2009)).

### A.    Dela Cruz waived any objection to the training component.

In closing argument Dela Cruz conceded that Officer Keliipaakaua was properly trained to operate his Stalker DSR 2X

---

[7]    HRE Rule 104(a) (2016) provides, in relevant part:

Questions of admissibility generally. Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of subsection (b) [concerning relevancy conditioned on fact]. In making its determination the court is not bound by the rules of evidence except those with respect to privileges.

[8]    HRE Rule 1101(d)(1) (2016) provides:

(d)    Rules inapplicable. The rules (other than with respect to privileges) do not apply in the following:

(1)    Preliminary questions of fact. The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under rule 104.

radar.[9]  He waived any challenge to the training prong.  <u>See</u>
<u>Gonzalez</u>, 128 Hawaiʻi at 317, 288 P.3d at 791 (noting that
failure to properly raise issue at trial level precludes party
from raising that issue on appeal).

### B.   The State laid a proper foundation that the radar device was operating properly.

Officer Keliipaakaua testified that on the day he
ticketed Dela Cruz, he tested and operated his assigned Stalker
DSR 2X radar according to the contents of the manual he received
in recruit class, the contents of the manual that came with the
device, the contents of the manual he received when he was
trained by the manufacturer's representatives, and the actual
training he received from the manufacturer.  He described the
device's two internal self-checks and how he performed the
accuracy test using the tuning forks that come with the device.
He testified that the device performed  automatic self-checks
every 10 minutes whenever the device was powered on, and he
explained how he checked that the patrol speed shown on the
device's display was consistent with his vehicle's odometer
speed.  He testified that his Stalker DSR 2X radar tested
properly before and after his shift on the day he ticketed Dela
Cruz.  The State satisfied the foundational requirements for
admitting the radar speed measurement into evidence under
<u>Gonzalez</u>, 128 Hawaiʻi at 324-27, 288 P.3d at 798-801.

---

[9]     In <u>State v. Gleed</u>, No. CAAP-16-0000373, 2017 WL 2839547 (Haw. App.
June 30, 2017) (SDO) the majority held that the State failed to lay a
sufficient foundation to establish that Officer Keliipaakaua was qualified to
operate the radar device at issue in that case.  <u>Id.</u> at *1.  In a concurring
opinion, Chief Judge Nakamura noted: "[W]hile proof that Officer
Keliipaakau[a] had successfully completed training provided or conducted by a
representative of the manufacturer would, in my view, have been sufficient to
satisfy the qualified operator prong, the State did not present such
evidence."  <u>Id.</u> at *2 n.1 (Nakamura, C.J., concurring).  In this case, the
State presented evidence that Officer Keliipaakaua attended and passed the
training conducted by the manufacturer's representatives.

### C. The "calibration" issue.

Dela Cruz argues the State failed to establish that the radar used by Officer Keliipaakaua was properly "calibrated."[10]

Officer Keliipaakaua testified that his radar unit was only about two months old when he used it to cite Dela Cruz, and that Applied Concepts calibrates new units before sending them to the user. He testified that Applied Concepts recommends that the radar unit be recalibrated every three years, but only requires recalibration if the unit fails in which case it must be sent back to the manufacturer, and that the unit he used when he cited Dela Cruz had never failed. Officer Keliipaakaua then explained the difference between "calibration" and the user-performed operational tests:

> A. Okay. So again, nowhere in the manual does it teach the user how to calibrate the device. So I don't have the knowledge or equipment to calibrate the device. And again, it's not -- it's not my duty to do that, as mentioned in the operator's manual.
>
> And for accuracy, that is mentioned in on [sic] the operator's manual. And again, you do it many -- there's about -- there's many different ways to do it. Again, with the self power on test with the test button, with the tuning forks, with checking with the display speed on the radar to your odometer speed. Those are all the accuracy tests that are mentioned in the operator's manual that the user should do.
>
> . . . .
>
> Okay. So again, nowhere in the manual does it teach the user how to make the correct frequency for the unit. It comes calibrated by the manufacturer. . . .
>
> . . . .
>
> Q. Okay. So what is the significance of the device being calibrated to a particular frequency?

---

[10] The supreme court mentioned the "calibration" issue in State v. Amiral, 132 Hawaiʻi 170, 319 P.3d 1178 (2014) but that case was decided based on the State's failure to lay foundation for the officer's training, and the calibration issue was not reached. Id. at 179, 319 P.3d at 1187. Amiral and Assaye both involved the use of a Laser Technology Incorporated 20-20 Ultra-Lyte laser gun by the Honolulu Police Department, rather than the Applied Concepts, Inc. Stalker DSR 2X radar used by the HCPD; it is not at all clear from the cases whether a laser gun (which uses light waves) is "calibrated" in the same manner as a radar gun (which uses radio frequency waves).

We did not reach the calibration issue in State v. Portillo, No. CAAP-18-0000949, 2020 WL 1879621 (Haw. App. Apr. 15, 2020) (SDO) (involving the Kauaʻi Police Department's use of an unidentified radar gun) because it had been waived. Id. at *2.

A.   Well cause they use certain waves when using the doppler [sic].  Doppler's based on certain -- using certain waves and, again, the manufacturer is the one that sets the unit to a certain frequency.  And then the user does not play any role in setting that frequency for that -- for the unit.

. . . .

Q.   So on November 16th of 2017, as far as the requirements of the manufacturer Applied Concepts is concerned, was your device in your vehicle properly calibrated?

A.   Yes.

. . . .

Q.   Okay.  The device that was in your vehicle, you had previously testified that it came already calibrated; correct?

A.   Yes.

Q.   Okay.  Based on the recommendation on page 40 [of the device's manual] would you have needed, prior to November 16th of 2017, to have that device recalibrated for any reason?

A.   No.

Q.   And had you had it recalibrated for any reason?

A.   No.

Q.   And you had also testified that the device was only approximately one to two months old?

A.   Yes.

The trial court allowed Officer Keliipaakaua to testify about the radar speed measurement taken of Dela Cruz.  When the court announced its verdict, it stated:

But again, the question is are we talking about accuracy of the device, which seems to be the critical issue discussed in the case law, versus calibration of the device.  And are they really two separate and distinct issues.  I think that they do mesh to some extent.  And for that reason, because again with respect to those specific tests for accuracy, I've got to find that the device was accurately operating on the date and at the time of the alleged infraction.

The trial court's analysis is consistent with State v. Tailo, 70 Haw. 580, 779 P.2d 11 (1989), also a radar gun case, in which the supreme court stated:

8

> *A special tuning fork can be used to check the calibration of the radar gun*. The tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork. To test the accuracy of the radar gun with the fork, the officer strikes the fork to get it vibrating and then holds the fork in front of the radar head. The radar unit will then read the fork's vibration and display the read Doppler frequency value for comparison by the officer with the imprinted value on the fork. . . .
>
> . . . .
>
> . . . [W]e hold that *once the State puts in evidence that the police conducted a tuning fork test indicating the [radar] gun was properly calibrated, this evidence creates a prima facie presumption that the tuning fork itself was accurately calibrated*.

Id. at 583, 779 P.2d at 13-14 (emphasis added).

Dela Cruz cites State v. Manewa, 115 Hawai'i 343, 167 P.3d 336 (2007) and, incidentally, State v. Wallace, 80 Hawai'i 382, 910 P.2d 695 (1996), in support of his argument that the State failed to show the radar gun itself was properly "calibrated." As we explained in State v. Weber, ___ Hawai'i ___, ___ P.3d ___, No. CAAP-18-0000478 (Haw. App. June 8, 2020), Manewa and Wallace are both distinguishable. In Manewa and Wallace there was no evidence that the State's witnesses confirmed the accuracy of their respective laboratory scales by, for example, weighing objects of a known, certified weight before or after weighing the drug evidence at issue in those cases.

"Calibrate" means "to measure against a standard[.]" Calibrate, Merriam-Webster, https://www.merriam-webster.com/dictionary/calibrate (last updated June 2, 2020). In this case Officer Keliipaakaua testified that he measured his radar device's accuracy against a standard — the tuning forks that came with the device. Dela Cruz produced no evidence to rebut the prima facie presumption that the tuning forks were accurately calibrated. Officer Keliipaakaua's testimony established that he in fact verified that his Stalker DSR 2X was "calibrated" to accurately read the speed of Dela Cruz's vehicle.

## CONCLUSION

Based upon the foregoing, we hold that the trial court did not abuse its discretion by admitting Officer Keliipaakaua's radar measurement of the speed of Dela Cruz's vehicle into evidence.  Accordingly, the "Judgment and Notice of Entry of Judgment" filed on September 14, 2018, is affirmed.

DATED:  Honolulu, Hawaiʻi, June 19, 2020.

On the briefs:

E. Britt Bailey,                    /s/ Lisa M. Ginoza
for Plaintiff-Appellee.             Chief Judge

Taryn R. Tomasa,                    /s/ Keith K. Hiraoka
for Defendant-Appellant.            Associate Judge

                                    /s/ Clyde J. Wadsworth
                                    Associate Judge