**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-18-0000887**
**30-JUN-2020**
**07:53 AM**

NO. CAAP-18-0000887

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TONY F. TORRES, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
SOUTH KOHALA DIVISION
(Case No. 3DTC-17-012333)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Tony F. Torres (**Torres**) was convicted by the District Court of the Third Circuit, South Kohala Division, State of Hawai'i,[1] of excessive speeding in violation of Hawaii Revised Statutes (**HRS**) § 291C-105[2] and Driving Without a License in violation of HRS § 286-102(b)(3).[3]

---

[1] The Honorable Mahilani E.K. Hiatt presided.

[2] HRS § 291C-105 (2007) provides, in relevant part:

> **Excessive speeding.** (a) No person shall drive a motor vehicle at a speed exceeding:
>
> . . . .
>
> > (2) Eighty miles per hour or more irrespective of the applicable state or county speed limit.

[3] HRS § 286-102 (Supp. 2016) provides, in relevant part:

> (b) A person operating the following category or combination of categories of motor vehicles shall be

(continued...)

The trial court entered a "Judgment and Notice of Entry of Judgment" (**Judgment**) on October 18, 2018.  For the reasons explained below, we affirm.

## BACKGROUND

On November 28, 2017, Hawaiʻi County Police Department (**HCPD**) officer Casey Cabral, using a Stalker DSR 2X radar device, determined that Torres was operating his vehicle on a public road at a speed of 94 miles per hour (**MPH**).  Officer Cabral cited Torres for excessive speeding and for driving without a license.  Torres contested the citation.  A bench trial was conducted on October 18, 2018.  The trial court found Torres guilty.  This appeal followed.

## DISCUSSION

Torres's only contention on appeal is that the State failed to lay the proper foundation for admissibility of Officer Cabral's testimony about Torres's speed displayed on his Stalker DSR 2X radar device.  "[T]he determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse."  State v. Gonzalez, 128 Hawaiʻi 314, 325, 288 P.3d 788, 799 (2012) (quoting State v. Assaye, 121 Hawaiʻi 204, 210, 216 P.3d 1227, 1233 (2009)).

To lay a foundation for the introduction of a radar speed measurement, the State must demonstrate that: **(1)** the police officer who used the device was <u>trained</u> as required by the device manufacturer; and **(2)** the device's accuracy was <u>tested</u>

---

[3](...continued)
examined as provided in section 286-108 and duly licensed by the examiner of drivers:

. . . .

    (3)    Passenger cars of any gross vehicle weight rating, buses designed to transport fifteen or fewer occupants, and trucks and vans having a gross vehicle weight rating of eighteen thousand pounds or less[.]

according to manufacturer-recommended procedures and was operating properly prior to use. See Gonzalez, 128 Hawaiʻi at 324-27, 288 P.3d at 798-801. As to the training prong, the State must show **(a)** what the manufacturer's training requirements were, and **(b)** what training was actually received by the police officer operating the device. See State v. Amiral, 132 Hawaiʻi 170, 178, 319 P.3d 1178, 1186 (2014) (citing Gonzalez, 128 Hawaiʻi at 327, 288 P.3d at 801).

### 1. Training

Officer Cabral testified that he received 16 hours of instruction on Doppler-based radar speed detection devices while in police recruit training. He received a National Highway Traffic Safety Administration manual, attended classroom instruction, and participated in field training. He passed a test and was certified to use radar speed detection devices.

Officer Cabral also testified that the Stalker DSR 2X radar is manufactured by Applied Concepts. Officer Cabral testified that he read the manual that came with his assigned Stalker DSR 2X radar. He explained that Applied Concepts does not require users of the Stalker DSR 2X radar to receive formal training; however, in 2014 he received four hours of classroom and field training from an Applied Concepts instructor. The training included instruction on testing and operating the device.

The evidence before the trial court established that although the manufacturer of the radar device did not have specific training requirements, Officer Cabral received training in the use of Doppler-based radar devices while he was in recruit training, and that he received additional training in the testing and operation of the radar from the manufacturer. We hold that the State established foundation for the training prong.

### 2.   Testing

Officer Cabral testified that on the day he cited Torres, he tested and operated his assigned Stalker DSR 2X radar according to the contents of the manual that came with the device and the training he received from Applied Concepts.  He tests the device before and after each shift.  When the device is powered on it conducts a self-test.  If it is working properly it emits a "happy beep" and the display shows three 8s.  If it is not working properly it will beep 20 times and the display will show "Fail."  He then tests the device using two tuning forks that come with the device, one for 25 MPH and one for 40 MPH.  He taps the tuning fork on a non-metallic surface and places it two inches in front of the antenna.  He tests the front and rear antennae.  Officer Cabral testified that his radar tested properly before and after his shift on the day he cited Torres.

In State v. Tailo, 70 Haw. 580, 779 P.2d 11 (1989), the supreme court held:

> ***A special tuning fork can be used to check the calibration of the radar gun***.  The tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork.  To test the accuracy of the radar gun with the fork, the officer strikes the fork to get it vibrating and then holds the fork in front of the radar head.  The radar unit will then read the fork's vibration and display the read Doppler frequency value for comparison by the officer with the imprinted value on the fork. . . .
>
> . . . .
>
> . . . [W]e hold that ***once the State puts in evidence that the police conducted a tuning fork test indicating the [radar] gun was properly calibrated, this evidence creates a prima facie presumption that the tuning fork itself was accurately calibrated***.

Id. at 583, 779 P.2d at 13-14 (emphasis added).  In this case Officer Cabral conducted a tuning fork test indicating that his radar was operating properly on the date he cited Torres.  Torres produced no evidence to rebut the prima facie presumption that the tuning forks were accurately calibrated.  We hold that the State established foundation for the testing prong.

## <u>CONCLUSION</u>

Based upon the foregoing, we hold that the trial court did not abuse its discretion by admitting Officer Cabral's radar measurement of the speed of Torres's vehicle into evidence. Accordingly, the "Judgment and Notice of Entry of Judgment" filed on October 18, 2018, is affirmed.

DATED: Honolulu, Hawaiʻi, June 30, 2020.

On the briefs:

E. Britt Bailey,
for Plaintiff-Appellee.

Min Tsui,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge