**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000835**
**18-DEC-2020**
**07:47 AM**
**Dkt. 55 SO**

NO. CAAP-19-0000835

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
DICKIE RABELLIZSA, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(WAIANAE DIVISION)
(CASE NO. 1DTC-19-015651)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Dickie Rabellizsa (**Rabellizsa**)

appeals from the Notice of Entry of Judgment and/or Order and

Plea/Judgment (**Judgment**) entered on November 4, 2019, in the

District Court of the First Circuit, Waiʻanae Division (**District

Court**).[1]  After a bench trial, the District Court convicted

Rabellizsa of one count of Excessive Speeding, in violation of

---

[1]     The Honorable Michelle N. Comeau presided.

Hawaii Revised Statutes (**HRS**) § 291C-105(a)(1) and/or (a)(2) (2007).[2]

Rabellizsa raises a single point of error on appeal, contending that the District Court erred in allowing Honolulu Police Department Officer Steven A.Y. Chun's (**Officer Chun's**) testimony as to a radar speed reading because the State failed to lay sufficient foundation, and therefore, there was insufficient evidence to convict Rabellizsa.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Rabellizsa's point of error as follows:

---

[2]     HRS § 291C-105 provides, in relevant part:

    **§ 291C-105  Excessive speeding.**  (a)  No person shall drive a motor vehicle at a speed exceeding:

    (1)    The applicable state or county speed limit by thirty miles per hour or more; or

    (2)    Eighty miles per hour or more irrespective of the applicable state or county speed limit.

    (b)    For the purposes of this section, "the applicable state or county speed limit" means:

    (1)    The maximum speed limit established by county ordinance;

    (2)    The maximum speed limit established by official signs placed by the director of transportation on highways under the director's jurisdiction; or

    (3)    The maximum speed limit established pursuant to section 291C-104 by the director of transportation or the counties for school zones and construction areas in their respective jurisdictions.

To lay an adequate foundation for the speed reading from a laser device, the State must demonstrate that: (a) the accuracy of the laser device was tested according to the manufacturer's recommended procedures; and (b) "the nature and extent of an officer's training in the operation of a laser [device met] the requirements indicated by the manufacturer." State v. Assaye, 121 Hawaiʻi 204, 213-15, 216 P.3d 1227, 1236-38 (2009). To meet the training prong, "the prosecution must establish both (1) the requirements indicated by the manufacturer, and (2) the training actually received by the operator of the laser gun." State v. Gonzalez, 128 Hawaiʻi 314, 327, 288 P.3d 788, 801 (2012).

Officer Chun testified that he measured Rabellizsa's speed at 83 miles per hour using his Stalker Radar device, which is installed in his vehicle. Officer Chun testified that he received classroom training, as well as training in his vehicle, and that he was tested on how to set up, test, and use the device. He testified that he received his training from Steve Hocker (**Hocker**), who is a representative from Stalker, and that the training was specific to the Stalker Radar device (as well as the Stalker Lidar, which is a handheld unit). Office Chun stated that Hocker provided a written manual for the radar device during the training and that the device manufacturer was Applied Concepts. Officer Chun was asked whether that was the same name as on the manual he was given, but after an objection (which was

3

overruled), no answer was recorded in the transcript. The next questions pertained to whether the manual provided specific training, procedures or requirements necessary to use the radar device, and Officer Chun's awareness of the procedures and requirements in the manual. Further questions regarding Officer Chun's training regarding the Stalker Radar device were asked and answered, including questions as to the training he received to ensure that the device was functioning accurately, as well as the training that a person must receive to use the radar device.[3]

Officer Chun was specifically asked whether the training he was given was "provided by the manufacturer" and, without objection, he answered yes. He was asked how he knew this and, without objection, he responded that he was told that by the instructor and it was in the manual. Further testimony was given regarding the specific training.

Later in his testimony, Officer Chun was asked more specifically about the trainer and he testified that Hocker was a representative from Stalker, which is the company that provides the Stalker Radar units from Applied Concepts. Officer Chun testified that Hocker provided him with an instructor certificate, and a photo identification of the instructor (Hocker), and that the instructor's certificate stated that he

---

[3]     Officer Chun was also examined on the manufacturer's recommended procedures for testing the device and Officer Chun's testing of the device in accordance with those procedures.

(Hocker) is an instructor from Applied Concepts and that he is an instructor for the specific radar device at issue in this case.

Officer Chun further testified that, although the device is installed in his vehicle and connects to the vehicle's speedometer, it obtains speeds using an antenna and measures speed based on its own, independent, software and the device gets recalibrated or updated by the manufacturer every three years. In reference to the date of the speeding incident, Officer Chun was asked whether his radar device had been calibrated within the three years; he responded affirmatively, that it had.

On appeal, Rabellizsa contends that there was insufficient foundation laid because there was no testimony on (a) whether the manual was created and endorsed by the manufacturer, Applied Concepts – referencing the above-referenced lack of response in the transcript to the question about the name on the manual – and (b) whether the manufacturer recommends training through the manual, the instructor, or both, in order to operate and test the radar device. Rabellizsa also argues on appeal – although he did not object to a lack of foundation on this basis in the District Court – that the State failed to establish that the Stalker Radar device was properly calibrated by Applied Concept's service representative.

"When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the

discretion of [district court], and its determination will not be overturned absent a showing of clear abuse." Assaye, 121 Hawaiʻi at 210, 216 P.3d at 1233 (citations, internal quotation marks and brackets omitted).

Based on our review of the entirety of Officer Chun's testimony, we conclude that the District Court did not abuse its discretion in determining that the State carried its burden to establish that the training provided through the instruction of Hocker and pursuant to the manual were the requirements indicated by the manufacturer, and that the training received by Officer Chun was pursuant to the manufacturer's requirements. See Gonzalez, 128 Hawaiʻi at 327, 288 P.3d at 801. We further conclude, based on our review of the entire record, that the State established that the radar device's accuracy was tested according to the procedures recommended by the manufacturer, and the District Court did not plainly err with respect to calibration of the radar device. In addition to Officer Chun's testimony that his radar device had been calibrated by the manufacturer within the three years recommended by the manufacturer, Officer Chun testified as to his training and execution of the use of two tuning forks and other tests used to test the accuracy of the radar device, in accordance with the manufacturer's recommendations. See State v. Tailo, 70 Haw. 580, 583, 779 P.2d 11, 13 (1989) (explaining that a special tuning fork can be used to check the calibration of a radar device;

"[t]he tuning fork is specially tuned to vibrate at a frequency equal to the Doppler frequency for some set speed stamped into the handle of the fork").  Accordingly, we conclude that the District Court did not abuse its discretion in determining that a proper foundation was laid and in admitting the speed reading from the radar device in this case.

For these reasons, the District Court's November 4, 2019 Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, December 18, 2020.

On the briefs:

Andrew I. Kim,
Deputy Public Defender,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge